SCOTT BRADFORD
United States Attorney
District of Oregon

CHRISTOPHER D. SCHROEDER
ALANA B. WEBER
STEPHAN A. COLLINS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: christopher.schroeder@usdoj.gov
Email: alana.weber@usdoj.gov
Email: stephan.collins@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ASHLEY NORTHRUP,<br><br>Defendant. | No. 3:23-cr-00051-18-RRB-KFR |

This document and its addenda set forth completely the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Oregon; it does not bind other federal, state, or local prosecuting authorities.

## PLEA AGREEMENT

### 1. Summary of Agreement

The defendant agrees to plead guilty to the following counts of the First Superseding

Indictment in this case:

- Count 1: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C), and

- Count 2: Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h).

The United States agrees not to criminally prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the First Superseding Indictment.

The parties agree that because the defendant committed the underlying offense of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, and because the defendant's role in that offense involved at least 400 grams but less than 1.2 kilograms of fentanyl, the base offense level shall be 30 pursuant to U.S.S.G. §§ 2S1.1(a)(1) and 2D1.1(c)(5).

The United States will recommend a sentence no higher than the low end of the guideline range as determined by the Court at sentencing. Following imposition of sentence, the United States will move to dismiss the remaining count, Count 6, as to this defendant only.

The defendant will waive all rights to appeal the conviction and sentence imposed under this agreement if it is within, or lower than, the guideline range determined by the Court. The defendant will also waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea, or new legal principles enunciated in Supreme Court or binding Ninth Circuit case

law after the date of this Plea Agreement that have retroactive effect.

## 2. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty plea if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## 3. Charges, Elements, Penalties, and Other Matters Affecting Sentence

### 3.1. Charges of Conviction

The defendant agrees to plead guilty to the following counts of the First Superseding Indictment:

- Count 1: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C), and

- Count 2: Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h).

### 3.2. Elements of the Charged Offenses

The elements of the offense charged in Count 1 are as follows:

1. There was an agreement between two or more persons to distribute and possess with the intent to distribute a schedule II controlled substance, specifically fentanyl,

2. The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The elements of the offense charged in Count 2 are as follows:

1. There was an agreement to commit money laundering,

2. The defendant knew the objective of the agreement, and

3. The defendant joined in the agreement with the intent to further its unlawful purpose.

"Money laundering" means that the defendant conducted or intended to conduct a financial transaction affecting interstate or foreign commerce involving property that represented the proceeds of the unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), knowing that that the property represented the proceeds of the unlawful distribution of controlled substances, and with either (1) the intent to promote the carrying on of the unlawful distribution of controlled substances, or (2) the knowledge that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds, or to avoid a transaction reporting requirement under state or federal law.

### 3.3. Statutory Penalties

The maximum and minimum penalties applicable to the charges of conviction are as follows:

Count 1 – Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances

- Imprisonment for up to 20 years,

- A fine of up to $1,000,000,

- Supervised release for no less than three years up to lifetime supervision, and

- A $100 special assessment.

Count 2 – Money Laundering Conspiracy

Case 3:23-cr-00051-RRB-KFR     Document 808     Filed 03/03/26     Page 4 of 20

- Imprisonment for up to 20 years,

- A fine of up to $500,000, or twice the value of the laundered funds, whichever is greater,

- Supervised release for up to three years, and

- A $100 special assessment.

### 3.4. Other Matters Affecting Sentence

### 3.4.1. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence:

1. Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date.

2. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

### 3.4.2. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury.

A defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, may be denied citizenship, and may not be permitted to return to the United States unless the defendant specifically

Case 3:23-cr-00051-RRB-KFR    Document 808    Filed 03/03/26    Page 5 of 20

receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including denaturalization and removal from the United States.

### 3.5. Restitution

There is currently no identifiable restitution. The defendant acknowledges that the Court will have sole discretion ultimately to determine if the defendant has liability for any restitution.

## 4. Factual Basis

The defendant admits the truth of the allegations in the First Superseding Indictment and of the following statement:

With respect to Count 1, beginning on a date unknown but no later than early June 2023, and continuing through at least June 22, 2023, within the District of Alaska and elsewhere, the defendant, Ashley Northrup, entered into an agreement with Heraclio Sanchez Rodriguez, Tamara Bren, Alison Giacullo, Erindira Pin, Naomi Sanchez, and others, to distribute and possess with the intent to distribute controlled substances, including fentanyl. Northrup joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

In early June 2023, Giacullo asked Northrup to travel with her from Alaska to California for the purpose of transporting a large amount of drug proceeds in furtherance of Sanchez Rodriguez's drug trafficking organization. Northrup and Giacullo were to receive $1,500.00 for bringing the money to California. Northrup directly communicated

over the phone about every aspect of this trip with Sanchez Rodriguez, whom she knew as "Charlie," and received instructions from Sanchez Rodriguez as to where to go, with whom she would meet, and what she should do. Northrup knew that the money she would be transporting was proceeds from the distribution of drugs by Sanchez Rodriguez's organization in Alaska. She agreed in part in the hope of financial gain, and in part because she feared retaliation from Sanchez Rodriguez and his organization if she refused.

Prior to their departure, coconspirator Tamara Bren gave both Northrup and Giacullo each $18,100.00 in cash at her residence. Northrup and Giacullo then traveled by commercial air to Chino, California, with the money concealed inside of their purses. Upon arrival, they were picked up at the airport by another member of the conspiracy, to whom they gave the money.

At the direction of Sanchez Rodriguez, Northrup and Giacullo then traveled by commercial air to Las Vegas, Nevada, where they met with two members of the conspiracy. These two coconspirators provided them with two vacuum sealed packages of a substance that Northrup knew to be fentanyl powder. Sanchez Rodriguez instructed Northrup and Giacullo to transport the fentanyl back to Chino, California. Because they did not want to risk bringing the fentanyl through an airport, Northrup and Giacullo rented a red Ford Mustang and drove from Las Vegas to Chino with the fentanyl hidden in the trunk.

Once Northrup and Giacullo arrived in Chino, Tamara Bren instructed them by phone to drive the fentanyl to Hermiston, Oregon. While en route to Oregon, Sanchez Rodriguez instructed them to return to Chino to pick up additional packages of fentanyl from a coconspirator there. Northrup and Giacullo returned to Chino and met with a

coconspirator in the parking lot of a Hampton Inn, who provided them with two more duct taped packages of a substance that Northrup knew to be fentanyl, concealed inside of a Starbucks bag. Sanchez Rodriguez then instructed them to drive to the Speedwash Laundry in Umatilla, Oregon, with the fentanyl.

Federal agents maintained surveillance of Northrup and Giacullo as they drove to the Speedwash Laundry in Umatilla, where they brought the fentanyl inside and met with codefendants Erindira Pin and Naomi Sanchez. The four of them went to a back office where they proceeded to "cut" the fentanyl powder, meaning to dilute it with other substances to expand the total amount of the mixture they could sell. At some point, Sanchez Rodriguez called Northrup and instructed her to purchase boxes and supplies at Walmart to package and ship out the fentanyl powder.

Officers then executed a search warrant on the laundromat. Inside the back office, officers discovered multiple open containers containing various colored powders on top of a table that had been lined with plastic tablecloth, along with duct tape and plastic consistent with drug packaging. The powder on the table inside the office tested positive for 1,132 grams of a mixture or substance containing a detectable amount of fentanyl. Officers also recovered purses belonging to both Northrup and Giacullo inside the office.

With respect to Count 2, beginning no later than March 2, 2023, and continuing through at least June 22, 2023, Northrup entered into an agreement with Heraclio Sanchez Rodriguez, Tamara Bren, Veronica Pardo, Karly Fuller, Lisa Santana, Naomi Sanchez, Michelle Downey, and others, to conduct financial transactions affecting interstate or foreign commerce involving property that represented the proceeds of the unlawful

distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). Northrup conducted numerous financial transactions in furtherance of the agreement, including but not limited to the following:

On March 2, 2023, Northrup sent a Cash App transfer of $515.00 to coconspirator Veronica Pardo.

Between June 4, 2023, and June 19, 2023, Northrup received 22 Cash App transfers totaling $10,328.00 from coconspirator Tamara Bren.

On June 7, 2023, Northrup received a Cash App transfer totaling $300.00 from coconspirator Karly Fuller.

On June 21, 2023, Northrup received a Cash App transfer of $300.00 from coconspirator Lisa Santana.

On June 21, 2023, Northrup received a Cash App transfer totaling $900.00 from coconspirator Karly Fuller.

On June 22, 2023, Northrup attempted to send two Cash App transfers of $30.00 each to codefendant Naomi Sanchez. One of those two transfers was successful.

On June 22, 2023, Northrup received four Cash App transfers totaling $1,000.00 from coconspirator Michelle Downey. Downey also attempted to send Northrup a fifth Cash App transfer of an additional $250.00.

Northrup knew that the money involved in each of these transactions represented the proceeds of the unlawful distribution of controlled substances by the Sanchez Rodriguez drug trafficking organization. She further acted in each instance with the intent to promote the carrying on of the unlawful distribution of controlled substances, and she

knew that each transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds, and to avoid a transaction reporting requirement under state or federal law.

The parties agree that the Court may rely upon this statement to determine whether there is a factual basis to support the guilty plea, to determine the relevant conduct applicable for purposes of the United States Sentencing Guidelines, and to evaluate the proper sentence under the criteria set forth in 18 U.S.C. § 3553(a).

## 5. The United States Sentencing Guidelines, Guideline Application Agreements, and Sentencing Recommendations

### 5.1. Advisory U.S. Sentencing Guidelines

The defendant acknowledges that the Court will consult the advisory United States Sentencing Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The Guidelines do not establish the statutory maximum or minimum sentence applicable to the offense to which the defendant is pleading guilty. The Guidelines are not mandatory, and the Court is not bound to impose a sentence recommended by the Guidelines.

### 5.2. Guideline Application Agreements

All agreements regarding Guidelines applications are set out in this section.

#### 5.2.1 Base Offense Level

The parties agree that because the defendant committed the underlying offense of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, and because the defendant's role in that offense involved at least 400 grams but less than 1.2

kilograms of fentanyl, the base offense level shall be 30 pursuant to U.S.S.G. §§ 2S1.1(a)(1) and 2D1.1(c)(5).

### 5.2.2 Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two-level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility – including by inappropriately seeking to delay sentencing – the United States will not make or, if already made will withdraw, this recommendation and motion.

### 5.3. Sentencing Recommendations

The United States Probation Office will prepare the defendant's presentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the Guidelines calculation in the presentence report, and to present evidence in support of their respective sentencing arguments.

The Government shall recommend a sentence no higher than the low end of the guideline range as determined by the Court at sentencing. Except as set forth in this agreement, the parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on any relevant

criteria, including the stipulated facts set forth in Section 4, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory Sentencing Guidelines and the sentencing factors set forth in 18 U.S.C. § 3553.

The defendant acknowledges that the United States is obligated to provide the Court with truthful and relevant information that may inform the sentencing decision, and that doing so will not entitle her to rescission of this agreement so long as the United States does, in fact, recommend a sentence that is not inconsistent with this agreement and does not otherwise violate or breach this agreement.

## 6. Additional Agreements by the United States

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the United States agrees that it will not criminally prosecute the defendant further for any other offense now known arising out of the subject of the investigation related to the charges brought in the First Superseding Indictment in this case and the defendant's admissions set forth above.

However, if the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case notwithstanding any term of this agreement, to include any charges dismissed thereof. The United States shall be entitled to the automatic reinstatement of any such dismissed charges. As an express term of this agreement, the defendant hereby agrees that to waive any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## 7. Additional Agreements by the Defendant

### 7.1. Waiver of Trial Rights

By pleading guilty pursuant to this agreement, the defendant intentionally and voluntarily waives the following trial rights:

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## 7.2. Waiver of Appellate Rights

The defendant waives the right to appeal any conviction for any of the charges set forth in this agreement. The defendant further waives the right to appeal any sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, except on the grounds that the sentence exceeds the maximum term authorized by statute. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support a plea of guilty.

The defendant's waiver of her rights does not operate to waive an appeal based on new legal principles enunciated in Supreme Court or Ninth Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

Should the defendant pursue an appeal in violation of this agreement, it will constitute a material breach of the agreement.

## 7.3. Waiver of Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack any conviction or sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or any portion thereof, including forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and

any and all constitutional or legal challenges to any conviction or guilty plea. The only exceptions to this collateral attack waiver are: (1) a challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; (2) a challenge to the voluntariness of the defendant's guilty plea; or (3) a challenge based upon new legal principles enunciated in Supreme Court or Ninth Circuit case law after the date of this Plea Agreement that have retroactive effect. The scope of this waiver applies to a collateral attack brought in any procedural vehicle, including but not limited to a challenge brought pursuant to 28 U.S.C. § 2241 or § 2255. The filing of such a challenge shall constitute a material breach of this agreement.

### 7.4. Waiver of Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement. The defendant agrees that the statements made in signing this agreement shall be deemed usable and admissible in any subsequent proceeding, regardless of whether the plea agreement or any other portion thereof is subsequently withdrawn or rescinded. The foregoing provision acts as a modification and express waiver of the provisions of Fed. R. of Evid. 410 and Fed. R. Crim. P. 11(f) and is effective upon the defendant's in-court admission to the factual basis. This provision applies regardless of whether the Court accepts this plea agreement.

### 7.5. Consent to Plea Before Magistrate Judge

The defendant has the right to enter a plea before a United States District Judge. The

defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections (if any) to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case.

### 7.6. Release Pending Sentencing

The defendant acknowledges that once her plea of guilty is accepted by the District Judge, it will be her burden to demonstrate by clear and convincing evidence that she is not likely to flee or pose a danger if she wishes to be released pending sentencing. As an express term of this plea agreement, the defendant agrees to abide by all release conditions that may be imposed and acknowledges that her failure to comply with any such condition may result in her detention pending sentencing, and that such failure will constitute a material breach of this agreement, and will entitle the government, at its option, to make a sentencing recommendation different from that set forth above, or to rescission of this agreement altogether.

### 7.7. Payment of Monetary Penalties and Cooperation with Financial Investigation

The defendant agrees that any monetary penalties imposed (including any fine, forfeiture, restitution, or assessment) will be subject to immediate enforcement as provided

in 18 U.S.C. § 3613 upon entry of judgment. The defendant acknowledges that any monetary penalties or forfeiture money judgment will be submitted to the Treasury Offset Program so that payments to the defendant may be applied to federal debts.

To facilitate the payment and collection of any monetary penalties that may be imposed, within 30 days of the entry of the guilty plea in court, the defendant agrees to truthfully complete under penalty of perjury a financial statement provided by the United States Attorney's Office, and to update the statement within seven days of any material change. The defendant further agrees to make full disclosure of all current and projected assets to the U.S. Probation Office before imposition of sentence and again before termination of supervised release or probation, such disclosures to be shared with the United States Attorney's Office.

## 7.8. Breach and Other Circumstances Entitling the Government to Relief

The defendant acknowledges that, if the United States demonstrates by a preponderance of the evidence that she has failed in material way to perform any obligation set out in this agreement, the United States is entitled, at its option, to recission of this agreement. This entitlement supplements, and does not replace, any other form of relief that the United States might be entitled to in the event of a breach, to include any other specific remedy set out under the terms of this plea agreement. The defendant acknowledges if the plea agreement is rescinded, the defendant's admission to the factual basis will be admissible against the defendant as specific in Section 7.4 of this agreement.

## 8. The Parties' Acceptance of this Agreement

I, Ashley Northrup, the defendant in this case, affirm this document contains all of

the agreements made between me (with the assistance of my attorney) and the United States regarding my guilty plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I appear to enter my plea.

I enter into this agreement voluntarily, with the intent to be bound, and with a full understanding that the concessions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill my obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand and agree that the government's burden to prove a breach will be by a preponderance of the evidence.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to

enter a guilty plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges contained in the First Superseding Indictment. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the Guidelines may have on my sentence. However, I understand that my attorney cannot guarantee any particular sentence except as set out herein, and I expressly acknowledge that my decision to plead guilty is not based on a belief that I am certain to receive a particular sentence that is not set out in this agreement.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, as charged in Count 1 of the First Superseding Indictment, and Money Laundering Conspiracy, as charged in Count 2 of the First Superseding Indictment.

DATED: 3 | 3 | 20￼        _____
                                      ASHLEY NORTHRUP
                                      Defendant

Case 3:23-cr-00051-RRB-KFR     Document 808     Filed 03/03/26     Page 19 of 20

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 3-3-2026

CHRISTOPHER D. PELOSO
Attorney for Ashley Northrup

On behalf of the United States, I accept the defendant's offer to plead guilty under the terms of this plea agreement.

SCOTT BRADFORD
United States Attorney
District of Oregon

DATED: 3/3/2026

CHRISTOPHER D. SCHROEDER
Assistant United States Attorney
United States of America